Sheila KNUBBE and David Aslani, Plaintiffs,

v.

David J. SPARROW, Gerald J. Rowin, Walter R. Reynolds, Charles Eberly, State Mutual Assurance Company of America, Management Corporation of America, a Michigan corporation, John P. Stocking, a Property Manager for Management Corporation of Michigan, Individually, Bill MacMillan, Glenda MacMillan, Resident Managers of North Shore Apartments, Individually, and All Named Defendants, Jointly and/or Severally, Defendants.

No. 91–CV–77152–DT.

United States District Court, E.D. Michigan, S.D.

Dec. 14, 1992.

---

Rudolph A. Wartella, East Pointe, MI, for plaintiffs.

Thomas M. Jinks, Troy, MI, for defendants.

## ORDER

JULIAN ABELE COOK, JR., Chief Judge.

On December 30, 1991, the Plaintiffs[1] filed a lawsuit with this court on the basis

1. The Plaintiffs, Sheila Knubbe and David Aslani, are husband and wife.

of 42 U.S.C. § 1985, contending, in essence, that their eviction from an apartment development had been executed by the Defendants[2] in violation of their rights under, *inter alia,* the First, Seventh and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1985. During the following month, the Plaintiffs amended their Complaint to include a second count which charged each of the Defendants with violating their rights under 42 U.S.C. § 1983. On September 2, 1992, the Defendants filed a motion for summary judgment[3] and a motion to terminate harassing depositions.[4]

For the reasons stated below, the Defendants' motion must be granted.[5]

I

On or about December 30, 1987, the Plaintiffs signed a one year agreement[6] with the North Shore Apartments Company to lease an apartment in St. Clair Shores, Michigan[7]. Shortly after moving into their apartment, they experienced a variety of problems with the utilities, appliances, plumbing, electrical and sanitary conditions that were not corrected by the Defendants to their satisfaction. On June 10, 1988, the Defendants initiated legal proceedings in an effort to evict the Plaintiffs from their apartment for non-payment of rent.

On September 9, 1988, the 40th District Court of Michigan entered a judgment in favor of the Defendants after determining that they had a right to the possession of the apartment and to the entry of a judgment for money damages.[8] The Plaintiffs' appeal to the Macomb County Circuit Court was unsuccessful.

Following a rejection of the Plaintiffs' appeal by the Macomb County Circuit Court, the 40th District Court entered a judgment in favor of the Defendants on January 26, 1989, in which it authorized the immediate eviction of the Plaintiffs from the apartment. Acting on the authority of a court order, several officers entered the Plaintiffs' apartment on the following day and forcibly removed them, as well as their property.[9]

II

It is the Defendants' position that the entry of a summary judgment is warranted in this cause because (1) the doctrine of res judicata precludes the commencement of any further litigation between the parties over the same issues that have been identified in the First Amended Complaint and (2) the Plaintiffs have failed to identify any public official who deprived them of their

2. The Defendants in this matter are David J. Sparrow, Gerald J. Rowin, Walter R. Reynolds, Charles Eberly, State Mutual Life Assurance Company of America, Management Corporation of Michigan, John P. Stocking, Bill MacMillan, and Glenda MacMillan.

3. The Defendants incorrectly labelled their motion as one for summary disposition. This court does not recognize such a motion. Hence, their motion will be evaluated as an application for dismissal, Fed.R.Civ.P. 12(b)(6), and/or summary judgment, Fed.R.Civ.P. 56.

4. On October 27, 1992, the court denied the Defendants' motion to terminate harassing depositions because of mootness.

5. For the purposes of this motion, the factual history of the dispute between the parties has been taken from the Plaintiffs' First Amended Complaint. This court notes with interest that the Plaintiffs, in their response to the Defendants' instant motion, have denied the validity of some of the allegations that had been made by them in their original Complaint. These inconsistencies will be noted in this opinion wherever it is appropriate to do so.

6. The lease agreement indicated that it was signed on December 30, 1987. However, the Plaintiffs' insist that the agreement was executed on January 15, 1988.

7. The lease provided, in part, that the tenant would waive "the right to a trial by jury in any action for rent or damages or in any summary disposition proceeding hereafter instituted by the Landlord against the Tenant in respect to the demised premises." The Plaintiffs acknowledge that they signed a lease agreement in blank but assert that they never knowingly waived their rights to a jury trial in any landlord-tenant dispute with the Defendants.

8. The Plaintiffs deny that any money judgment was entered. (Plaintiffs' Response at 4.)

9. No mention of these facts was made in the First Amended Complaint.

constitutional rights directly or by conspiracy under their § 1983 and § 1985 theories.

The Plaintiffs reject the assertion that the doctrine of res judicata is a bar to the present action because (1) the state courts were unable and unwilling to protect their federal rights and (2) the state laws did not afford them a fair procedure in which to assert their constitutional claims.[10]

Moreover, they maintain that the Defendants discriminated against them on the basis of Aslani's ethnic origin and fraudulently influenced the state court to enforce an "unconstitutional state law". To them, their unlawful eviction by the Defendants can be characterized as an act under the color of state law which, in turn, deprived them of their constitutional rights.

### III

Rule 12(b) of the Federal Rules of Civil Procedure [11] permits a party to raise several defenses including the absence of subject matter jurisdiction and the failure to state a claim upon which relief can be granted. "In order for a complaint to be dismissed for failure to state a claim, a court must conclude 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Carver v. Bunch*, 946 F.2d 451, 452 (6th Cir.1991) (quoting *Haines v. Kerner*, 404 U.S. 519, 521, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972) (per curiam)). Moreover, the court must liberally construe the pleading in favor of the non-moving party and accept all well-pleaded allegations as being true. *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389 (6th Cir. 1975).[12]

Under Rule 56 of the Federal Rules of Civil Procedure, a summary judgment is to be entered if the moving party demonstrates that there is no genuine issue as to any material fact, and if the evidence is such that a reasonable jury could find only for the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–248, 106 S.Ct. 2505, 2509–2510, 91 L.Ed.2d 202 (1986). In making this determination, the court is authorized to examine any pleadings, depositions, answers to interrogatories, admissions, and affidavits in a light that is most favorable to the non-moving party. *Boyd v. Ford Motor Company*, 948 F.2d 283, 285 (6th Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 1481, 117 L.Ed.2d 624 (1992). A party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial ..." will mandate the entry of a summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–323, 106 S.Ct. 2548, 2552–2553, 91 L.Ed.2d 265 (1986).

### A

█ The doctrine of res judicata is intended to conserve judicial resources, prevent inconsistent decisions and relieve the costs that are involved in multiple lawsuits. *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980). The Sixth Circuit Court of Appeals (Sixth Circuit) has stated:

As a general matter, the doctrine of res judicata forecloses relitigation of matters that were determined, or should have been raised, in a prior suit in which a

---

**10.** The Plaintiffs also assert that the Defendants' motions were submitted in violation of the Michigan Rules of Professional Conduct and/or the Local Rules of the Eastern District of Michigan. They believe this action warrants the imposition of sanctions under Fed.R.Civ.P. 11.

**11.** Fed.R.Civ.P. 12(b) reads, in part, that:
If, on a motion asserting the defense ... to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment

and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

**12.** The same standard is applied on appeal. *See G.M. Engineers & Assoc., Inc. v. West Bloomfield Township*, 922 F.2d 328, 330 (6th Cir.1990) (On appeal from dismissal of claim, court must accept all of plaintiff's factual allegations as true and determine whether any set of facts consistent with allegations would entitle plaintiff to relief).

court entered a final judgment on the merits.

*Fellowship of Christ Church v. Thorburn,* 758 F.2d 1140, 1143 (6th Cir.1985) (with reference to *Migra v. Warren City School Dist.,* 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984)). Under federal common law, three exceptions exist to the application of res judicata. *Id.* at 1143–1144. Res judicata is inappropriate where (1) the state courts were unable or unwilling to protect federal rights, (2) the claimant has not "freely and without reservation" submitted his federal claims for a decision by the state court or (3) "the party against whom an earlier decision is asserted did not have a full and fair opportunity to litigate the claim or issue decided by the first court." *Id.* (citations omitted).

█ When no federal common law exception to the doctrine applies, a district court must give the final order of a state court the preclusive effect that the state court themselves would give that order. *Fellowship of Christ Church,* 758 F.2d at 1144 (citations omitted).[13] If the doctrine of res judicata is applicable, the entry of an order of dismissal is appropriate. *Id.* at 1145 (citing *Gose v. Monroe Auto Equipment,* 409 Mich. 147, 294 N.W.2d 165 (1980)).

█ In the present case, the Plaintiffs contend that the state court was unwilling and unable to protect their federal rights. In support of their argument, the Plaintiffs have filed excerpts from the state court proceedings in which the judge opined:

If you [the Plaintiffs] have, in fact, been discriminated upon on the basis of national origin or race or whatever, there are many remedies provided for you in

the law. One of those remedies is not permanent possession of an apartment.... Whether you have another suit, another action, another law suit for the actions on behalf of the [Defendants] is a matter that will be decided in another court, at another time, but not today and not in this action.

(Transcript January 26, 1989, at 30). The Defendants contend that an eviction, which is held to be lawful by a state court, cannot be determined to be unlawful at the same time.[14] The Defendants are mistaken. An act may be held to be lawful under state law and unlawful under federal law.

Notwithstanding, the Plaintiffs have alleged a federal common law exception to the application of the res judicata doctrine. Therefore, the court will not adopt the doctrine of res judicata, and will now address the merits of each claim.

### B

42 U.S.C. § 1983 provides, in part, that: [e]very person, who under color of any statute ... of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law....

█ In order to recover under this statute, a plaintiff must prove that (1) the defendant has deprived him of a right that has been secured by the Constitution and laws of the United States and (2) in depriving him of the constitutional right, the defendant acted "under color of law". *Par-*

---

**13.** In *Fellowship of Christ Church,* the Sixth Circuit noted:

Under Michigan law there are three prerequisites to [an] application of the doctrine of res judicata: (1) the prior action must have been decided on its merits; (2) the issues raised in the second case either were resolved in the first, or through the exercise of reasonable diligence, might have been raised and resolved in the first case; (3) both actions involved the same parties or their privies.

758 F.2d at 1144–1145 (citing *Socialist Workers Party v. Secretary of State,* 412 Mich. 571, 317 N.W.2d 1 (1982)).

**14.** The Defendants compare their opponents in this case with the Plaintiffs in *Fellowship of Christ Church,* 758 F.2d 1140. In that case, the Sixth Circuit affirmed the dismissal of the action by the district court on the basis of the res judicata doctrine. However, the Sixth Circuit looked only to state law after concluding that no exception to the federal common law was applicable. In the case at bar, an exception to the federal common law does exist.

ratt v. Taylor, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981); See also Adickes v. Kress & Co., 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d ˙142 (1970) (with reference to Monroe v. Pape, 365 U.S. 167, 184, 187, 81 S.Ct. 473, 482, 484, 5 L.Ed.2d 492 (1961) and United States v. Price, 383 U.S. 787, 793, 794, 86 S.Ct. 1152, 1156, 16 L.Ed.2d 267 (1966)).[15] The term, "under color of law," requires that the conduct, which allegedly caused the deprivation, be fairly attributable to the state. Lugar v. Edmonson Oil Co., 457 U.S. 922, 937, 102 S.Ct. 2744, 2753, 73 L.Ed.2d 482 (1981)[16]; See Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 157, 98 S.Ct. 1729, 1733, 56 L.Ed.2d 185 (1977) (private party may be held liable under § 1983 for deprivation of federal right when he acts under color of law.)

 To be "fairly attributable," (1) the deprivation must result from the exercise of some right or privilege that has been created by the state, by a rule of conduct which has been imposed by the state, or by a person for whom the state is responsible and (2) the defendant must be a state actor. Lugar, 457 U.S. at 937, 102 S.Ct. at 2753. A defendant can be a "state actor" if (a) he is a state official, (b) he acted together with, or obtained significant aid from, state officials or (c) his conduct is chargeable to the state. Id. The "state actor" requirement limits the constitutional challenges

that a private party will confront whenever they rely upon a state law which governs their community relationships. Id.

 While the procedures established by a statute are the products of state action, a private party's misuse of a state statute is not state action. Id. at 941, 102 S.Ct. at 2755. Rather, there must be something, such as joint participation, to convert the private party into a state actor.[17] Id. at 939, 102 S.Ct. at 2754.[18] Joint participation exists when the private and public parties act with a common understanding. Adickes, 398 U.S. at 152, 90 S.Ct. at 1605; See Bergman v. United States, 551 F.Supp. 407, 412 (W.D.Mich.1982) (citations omitted).

The Supreme Court held that a private party's joint participation with a state official in a conspiracy to discriminate would plainly [provide] the state action essential to show a direct violation of [one's] Fourteenth Amendment equal protection rights, whether or not the actions of the [state or one of its officials] were officially authorized or lawful; . . . . Moreover, a private party involved in such a conspiracy, even though not an official of the [s]tate, can be liable under § 1983. 'Private persons, jointly engaged with state officials in the prohibited actions, are acting 'under color' of law for purposes of the statute. To act 'under color' of law does not require that the

---

**15.** Adickes involved a § 1983 claim that had been brought against a private party for alleged race discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment.

**16.** Conduct which satisfies the state action requirement of the Fourteenth Amendment constitutes conduct "under color of law" for purposes of § 1983. Lugar, 457 U.S. at 935, 102 S.Ct. at 2752.

**17.** There are four tests to measure state involvement: (1) the public function test, (2) the state compulsion test, (3) the joint participation test and (4) the nexus test. In Volunteer Medical Clinic, Inc. v. Operation Rescue, 948 F.2d 218, 227 (6th Cir.1991), the Sixth Circuit applied the nexus test to a § 1985(3) claim based on Wagner v. Metropolitan Nashville Airport Auth., 772 F.2d 227, 229–230 (6th Cir.1985). However, Wagner dealt with a regulated entity which made the

application of the nexus test logical. The Wagner court also recognized the existence of the remaining three tests. Id. at 229. As in Adickes, this court believes that the joint participation test is the proper one in racial discrimination/Fourteenth Amendment cases.

**18.** "A [s]tate is responsible for the . . . act of a private party when the [s]tate, by its law, has compelled the act." Adickes, 398 U.S. at 170, 90 S.Ct. at 1615. However, a state's mere acquiescence in a private action does not convert that action into that of the state. Flagg Bros., 436 U.S. at 164, 98 S.Ct. at 1737. Moreover, state action "includes actions of state courts and state judicial officials." Shelley v. Kramer, 334 U.S. 1, 18, 68 S.Ct. 836, 844, 92 L.Ed. 1161 (1948). Therefore, the enforcement of a state law by a court constitutes state action. See Heitmanis v. Austin, 899 F.2d 521, 527 (6th Cir.1990) (action was fairly attributed to State because it enforced the law).

*accused be an officer of the [s]tate. It is enough that he is a willful participant in joint activity with the [s]tate or its agents.'*

*Adickes,* 398 U.S. at 152, 90 S.Ct. at 1605 (citations omitted) (emphasis added). *See Lugar,* 457 U.S. at 931, 102 S.Ct. at 2750. The joint participation analysis appears equally applicable to claims of violations under the First Amendment.

Essential to the proper disposition of this motion is whether the Plaintiffs are challenging the constitutionality of a state law or contending that the state court made an erroneous application of the law to them. In *Lugar,* the Supreme Court held that under § 1983, the petitioner "did present a valid cause of action ... insofar as he challenged the constitutionality of the Virginia statute; he did not insofar as he alleged only misuse or abuse of the statute." 457 U.S. at 942, 102 S.Ct. at 2756.

 In their First Amended Complaint, the Plaintiffs allege that the writ of restitution was wrongfully secured by the Defendants in violation of their constitutional rights and Mich.Comp. Laws § 600.-5720.[19] In their response to the Defendants' pending motion, they make an overly broad reference to an "unconstitutional state law" without specificity. However, the Plaintiffs claimed during the October 27, 1992 hearing that they were only challenging the misuse of the law as it applied to them. On the basis of this representation and because the Defendants' misuse, if any, of a state statute does not constitute state action, *Lugar,* 457 U.S. at 941, 102 S.Ct. at 2755, the Plaintiffs have failed to state a claim under 42 U.S.C. § 1983 for a violation of their First and Fourteenth Amendment rights.[20]

 By its language, § 1983 only protects against the deprivations of constitutional rights. *See Adickes,* 398 U.S. at 150, 90 S.Ct. at 1604. Furthermore, the Sev-

enth Amendment is not applicable to any state court proceedings. *Minneapolis and St. Louis R. Co. v. Bombolis,* 241 U.S. 211, 217, 36 S.Ct. 595, 596, 60 L.Ed. 961 (1916); *State Farm Mutual Insurance Co. v. Baasch,* 644 F.2d 94, 97 (2nd Cir.1981); *Woods v. Holy Cross Hospital,* 591 F.2d 1164, 1172, n. 12 (5th Cir.1979). Therefore, the Plaintiffs are precluded from asserting a valid § 1983 cause of action under the state laws or the Seventh Amendment.

Because the Plaintiffs have failed to state a valid claim under § 1983, the Defendants must prevail on this issue.

## C

42 U.S.C. § 1985(3) provides, in pertinent part, that:

[i]f two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws ... [and] if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

 In *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971), the Supreme Court delineated the four elements that are necessary for a litigant to establish a cause of action under 42 U.S.C. § 1985(3):

(1) a conspiracy;

---

**19.** Mich.Comp.Laws § 600.5720 precludes retaliatory eviction.

**20.** At one point, the Defendants argue that the Plaintiffs failed to allege that "any public official was a party to the actions giving rise to this suit." (Defendants' Brief at 8–9.) This failure

does not, by itself, mandate the entry of a summary judgment on the § 1983 claim. This follows because a private party may be liable under § 1983. *See Adickes,* 398 U.S. at 152, 90 S.Ct. at 1605.

(2) to deprive any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws;

(3) an act committed by one or more of the conspirators in furtherance of the conspiracy; and

(4) such act injured a person or his property or deprived him of exercising any right or privilege of a citizen of the United States.

*See also Volunteer Medical Clinic, Inc. v. Operation Rescue*, 948 F.2d 218, 223 (6th Cir.1991); *Bergman*, 551 F.Supp. at 414. There is no statutory requirement of state participation or support for the conspirators' conduct that is proscribed by § 1985(3). *Cohen v. Illinois Institute of Technology*, 524 F.2d 818, 828 (7th Cir. 1975) (citing *Griffin*, 403 U.S. 88, 91 S.Ct. 1790 and *Dombrowski v. Dowling*, 459 F.2d 190, 194 (7th Cir.1972).

 However, this statute does not create any substantive rights. *Great American Federal Savings and Loan Association v. Novotny*, 442 U.S. 366, 372, 99 S.Ct. 2345, 2348, 60 L.Ed.2d 957 (1979). Rather, it merely provides a remedy for any violations of the Constitution or federal statutory law. *Great American Federal Savings and Loan Association*, 442 U.S. at 372, 99 S.Ct. at 2349; *Nieto v. United Auto Workers Local 598*, 672 F.Supp. 987, 991 (E.D.Mich.1987) (citations omitted). In *Griffin*, the Supreme Court held that allegations of a private conspiracy to deprive a person of his rights under the Thirteenth Amendment and the right of interstate travel did state a cause of action under § 1985(3). 403 U.S. at 104–107. However, § 1985(3) does not create a cause of action for purely private violations of the First or Fourteenth Amendments. *United Brotherhood of Carpenters & Joiners of America, Local 610, AFL–CIO, et al. v. Scott et al.*, 463 U.S. 825, 831, 103 S.Ct. 3352, 3357, 77 L.Ed.2d 1049 (1983).[21] If the alleged

violation is of a right which is only protected against state interference, such as the Fourteenth Amendment, then the corresponding level of state action must be proven. *Volunteer Medical Clinic, Inc.*, 948 F.2d at 226. *See Scott*, 463 U.S. at 833, 103 S.Ct. at 3358 ("*Griffin* did not hold that even when the alleged conspiracy is aimed at a right that is by definition a right only against state interference that the plaintiff in a § 1985(3) suit nevertheless need not prove that the conspiracy contemplated state involvement of some sort."); *Cohen*, 524 F.2d at 828 (Fourteenth Amendment may be violated only by state action).

 A conspiracy to violate First Amendment and Fourteenth Amendment rights under § 1985(3) is not established without proof of state involvement. *Volunteer Medical Clinic, Inc.*, 948 F.2d at 226 ("If ... the violation alleged is of a right protected only against state interference, such as rights guaranteed under the Fourteenth Amendment, then the corresponding level of state action must be proven."). Moreover, the corresponding level of state action must be proven. *Id.* As discussed in Part B of this order, the state action requirement of the amendments is conduct that is "fairly attributable to the [s]tate." *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 2753, 73 L.Ed.2d 482 (1981). Private misuse of constitutional state procedures, such as retaliatory measures for the exercise of a right, is not a state action under *Lugar*. *See Higbee v. Starr*, 698 F.2d 945, 946 (8th Cir. 1983) (improper use of eviction statute not state action under *Lugar*). However, state action exists if the defendant, by using the statutory procedures, causes the state to enforce an unconstitutional law. *See Lugar*, 457 U.S. at 938, n. 20, 941, 102 S.Ct. at 2754, n. 20, 2755.

 In *York v. Seaboard Coast Line R. Co.*, 535 F.Supp. 733, 735 (E.D.Tenn. 1980), the district court noted that:

**21.** In *Scott*, the Supreme Court determined that: [h]ad § 1985(3) in so many words prohibited conspiracies to deprive any person of the equal protection of the laws guaranteed by the Fourteenth Amendment or of freedom of speech guaranteed by the First Amendment, it

would be untenable to contend that either of those provisions could be violated by a conspiracy that did not somehow involve or affect a State.
463 U.S. at 831, 103 S.Ct. at 3357.

[i]f a state agency arbitrarily refuses to serve a class of persons ... it violates the Fourteenth Amendment. Or if private persons take conspiratorial action that prevents or hinders the constituted authorities of any [s]tate from giving or securing equal treatment, the private persons would cause those authorities to violate the Fourteenth Amendment; the private persons would then have violated § 1985(c) [sic].

If, however, private persons engage in purely private acts of discrimination ... they do not violate the Equal Protection Clause of the Fourteenth Amendment. The rights secured by the Equal Protection and Due Process Clauses of the Fourteenth Amendment are rights to protection against unequal or unfair treatment by the [s]tate, not by private parties.

Thus, the passive involvement of a state may not constitute the requisite state action. *See Browder v. Tipton*, 630 F.2d 1149, 1153, n. 11 (6th Cir.1980).

█ In the present case, the Plaintiffs have alleged all of the necessary elements to state a claim under § 1985(3), except a deprivation of a substantive right. They contend that the Defendants conspired to discriminate against each of them because of Aslani's ethnic origin[22] and in retaliation for the exercise of their First Amendment rights and in violation of the Fourteenth Amendment. The First and Fourteenth Amendments do not proscribe purely private actions. Hence, the Plaintiffs must allege some state involvement in order to state a valid claim.

The Plaintiffs do not point to an affirmative act by the state. Rather, they submit that a § 1985(3) claim is satisfied if the

[22]. In order for an aggrieved party to properly assert a claim under 42 U.S.C. § 1985(3),

[n]ot only must the predicate violation be of a federally created right, but 'there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.' ... Prior to *Scott* ..., the Sixth Circuit applied section 1985(3) to discrimination against 'discrete and insular minorities' identified through traditional equal protection analysis under the fourteenth amendment.

state court is "affected by the conspiracy." (Plaintiffs' Response at 11.) Under the facts provided, the court assumes that it was the Defendants' use of the state court proceedings that "affected" or influenced the state.

As previously noted, the Plaintiffs only challenge the misuse of the state statute by the Defendants. Because a private party's misuse of a state statute is not state action, *Lugar*, 457 U.S. at 941, 102 S.Ct. at 2755, they have failed to state an actionable claim under § 1985(3).

█ To the extent that the Plaintiffs argue that the state law violations provide a basis for relief under § 1985, they fail to state a cause of action. This statute protects only against violations of federal rights. *Nieto*, 672 F.Supp. at 991.

Finally, the Seventh Amendment is not applicable to state court proceedings. *Minneapolis and St. Louis R. Co. v. Bombolis*, 241 U.S. 211, 217, 36 S.Ct. 595, 596, 60 L.Ed. 961 (1916). Thus, no § 1985(3) cause of action exists under this Amendment.

For the above stated reasons, the Plaintiffs have failed to state a valid claim under § 1985(3).

Accordingly, the Plaintiffs' Complaint must be dismissed for failure to state a claim under § 1983 and § 1985.

## IV

█ During the course of this matter, several actions by the Plaintiffs have alarmed the court. First, in their response to the Defendants' motion, the Plaintiffs contested the validity of some of the allegations that are contained in their First Amended Complaint. In their brief, the Defendants extrapolated the facts from

*Nieto v. United Auto Workers Local 598*, 672 F.Supp. 987, 992 (E.D.Mich.1987) (citations omitted); *See also Browder*, 630 F.2d at 1152 (§ 1985(3) violation requires class-based motivation for the wrong).

To the extent that the Plaintiffs in this cause bring the action as tenant organizers, they fail to state a claim under § 1985(3). *See Carchman v. Korman Corp.*, 594 F.2d 354, 356 (3rd Cir.1979) (class of tenant organizers is beyond reach of § 1985(3)).

their First Amended Complaint. By contesting the Defendants statement of facts, the Plaintiffs altered their own version of the story. This is not a situation of inconsistent pleadings. The Plaintiffs now deny some of the statements in their First Amended Complaint.[23] In addition and in their response to the Defendants' motion to terminate harassing depositions, the Plaintiffs wrote:

> That since the Defendants had denied the Plaintiffs of their rights to discovery, the Plaintiffs on August 27, 1992, filed a Motion for an Order Compelling Discovery and a Brief in Support thereof (a copy of which is attached hereto as Exhibit D).

(Plaintiffs' Response at 3). They also attached copies of the documents at Exhibit D. However, an examination of the official file and the docket reveals that no such motion was ever filed. In addition, no order of reference to a magistrate judge exists. In fact, the attached exhibits neither bear the signatures of the attorney nor a filing date stamp. In the absence of any evidence to the contrary and without making any prejudgment, it would appear from the content of the documents that the representations of the Plaintiffs were not grounded in fact and appear to have been used by them for an improper purpose; to wit, deceiving the court with regard to their diligence, not to mention veracity.

In making a determination as to whether Rule 11 has been violated, the court must consider if the written submissions are (1) well-grounded in fact, (2) warranted by existing law or based upon a good faith argument for the extension or modification of existing law, and (3) utilized for purposes of harassment, delay or needless increases in litigation costs. Fed.R.Civ.P. 11.

Because this court questions the conduct and the purpose of the Plaintiffs and/or their counsel in filing the challenged papers but is unable to resolve the issue based on the current record, this matter will be referred to a magistrate judge to determine if sanctions under Fed.R.Civ.P. 11 should be imposed upon them.

IT IS SO ORDERED.

---

**23.** For example, in their First Amended Complaint, the Plaintiffs allege that:

> ¶ 16. ... Trial began on September 8, 1988, causing inadequate notice to Plaintiffs. A Judgment for Possession for Non–Payment of Rent and Costs was granted to Defendants. Whereupon, Plaintiffs appealed to the Macomb County Circuit Court. Their appeal was denied and an [a]ppeal was processed to the Michigan Court of Appeals; and then to the Michigan Supreme Court.

(Plaintiffs' First Amended Complaint at 4). Whereas, in their response to the Defendants' motion, the Plaintiffs state:

> ¶ 9. The Defendants falsely claim that "Judge William A. Crouchman rendered a possession and money judgment in favor of North Shore [...]" ..., while the Defendants are fully cognizant and their counsel could readily determine that Judge Crouchman never entered any money judgment against the Plaintiffs "on or about September 9, 1988"

(Plaintiffs' Response at 4). In addition, the Plaintiffs submit that:

> ¶ 10. The Defendants falsely claim that the Plaintiffs "are currently seeking leave to appeal to the Michigan Supreme Court" ..., while the Defendants are fully aware and their counsel could readily determine that at the present time there is no appeal pending before any tribunal, including the Michigan Supreme Court against the Defendants.

*Id.* A final example encompasses the Plaintiffs' allegation that:

> ¶ 7. The Defendants falsely claim that the Plaintiffs had been served with a Notice to Quit ..., while the Defendants are cognizant of the fact that the Plaintiffs all along and through certified statement objected to their being denied of their rights to be served with a [sic] Notice to Quit.

*Id.* at 3. In opposition to paragraph 10 and 7 above, the Defendants filed copies of a Possession and Money Judgment dated September 9, 1988 from the 40th District Court and a Notice of Quit for Non–Payment of Rent, both of which contain a proof of service representation. (Defendants' Brief at Exhibit B and C).